# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| TAMARA WUERFFEL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| COOK COUNTY SHERIFF'S OFFICE, | ) | |
| THOMAS DART, in his individual | ) | |
| capacity, RONALD ZYCHOWSKI, | ) | |
| ZELDA WHITTLER, DANA WRIGHT, | ) | |
| MARLON PARKS, HELEN BURKE, | ) | |
| ALEXIS FIGUEROA, in their individual | ) | 14 C 3990 |
| capacities, COOK COUNTY SHERIFF'S | ) | |
| MERIT BOARD, JAMES P. NALLY, | ) | |
| Chairman, BYRON BRAZIER, | ) | |
| Vice Chairman, BRIAN RIORDAN, | ) | |
| Board Member, JENNIFER E. BAE, | ) | |
| Board Member, JOHN DALICANDRO, | ) | |
| Secretary, VINCE WINTERS, Board | ) | |
| Member, KIM R. WIDUP, Board | ) | |
| Member, PATRICK BRADY, Board | ) | |
| Member, and the COUNTY OF COOK, | ) | |
| a unit of local Government, | ) | |
| | | |
| Defendants. | | |

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

Now before the Court are three motions: (i) an amended motion to dismiss by

the Individual Members of the Cook County Sheriff's Merit Board and the Merit

Board; (ii) an amended partial motion to dismiss by the Cook County Sheriff's Office

("Sheriff's Office") and Defendants Sheriff Thomas Dart, Ronald Zychowski, Zelda

Whittler, Dana Wright, Marlon Parks, Helen Burke, and Cook County; and (iii) a motion to dismiss Plaintiff Tamara Wuerffel's ("Wuerffel") First Amended Complaint by Defendant Alexis Figueroa's ("Defendant Figueroa"). For the following reasons, the motions to dismiss are granted in part and denied in part.

## BACKGROUND

For the purposes of the instant motion, the following well-pleaded allegations derived from Wuerffel's Complaint are accepted as true. The Court draws all reasonable inferences in favor of Wuerffel. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

Prior to her termination, Wuerffel had been employed with the Cook County Sheriff's Office ("Sheriff's Office") since 1998. Dkt. 33, at ¶ 5. At the time of her termination, she was a highly decorated Sergeant, she had an exemplary record, and she had "received letters and commendations for her outstanding performance as a supervisor with the Sheriff's Office." Dkt. 33, at ¶ 43. Around December of 2012, Wuerffel scored second in rank after the Lieutenants promotional process. Dkt. 33, at ¶ 46. Shortly thereafter, Wuerffel claims that Commander Ronald Zychowski ("Defendant Zychowski") began harassing her about her overtime for court appearances. Dkt. 33, at ¶ 48. In January 2013, Defendant Zychowski refused to approve Wuerffel's overtime requests, while similarly situated male employees were treated differently. Dkt. 33, at ¶ 51.

On January 12, 2013, Wuerffel complained to Marlon Parks, ("Defendant Parks"), the Chief for the Cook County Sheriff's Police Department, about the harassment she was experiencing.   Dkt. 33, at ¶ 52.   On January 19, 2013, she complained to Defendant Parks that "she had heard Zychowski was trying to push an OPR case against her to prevent her from being promoted."   Dkt. 33, at ¶ 54. According to Wuerffel, Defendant Parks told her "that he would tell Zychowski to back off and that he knew she did not do anything wrong."   *Id*.   Instead, she claims, that Defendant Parks "initiated a complaint against [her] with the Sheriff's Office of Professional Review ("OPR") . . . falsely accusing her of submitting improper overtime requests, even though he had admitted to her that he knew she did nothing wrong."  Dkt. 33, at ¶ 56.

In June of 2013, Defendant Parks denied Wuerffel's request to be a Field Training Officer Supervisor.  Dkt. 33, at ¶ 55.  Then, in August of 2013, Defendant Zychowski denied her request to work a roadside safety check and regular overtime, but "two male sergeants with less seniority than her were allowed to work overtime." Dkt. 33, at ¶ 58.  During that same month, Wuerffel complained to OPR about being harassed by Defendant Zychowski.  Dkt. 33, at ¶ 60.  However, Defendant Figueroa, an investigator for the Cook County Sheriff's Department Office of Professional Review, and the office of OPR failed to investigate her complaint.  *Id*.  In September of 2013, Wuerffel was denied training for a Hostage Negotiations team.   Dkt. 33, at ¶ 61.  She again informed OPR, "that the harassment was getting worse and that it

was affecting her ability to attend training." Dkt. 33, at ¶ 62. Moreover, Wuerffel claims that she notified the Sheriff's Office command staff of the discrimination and retaliation, but they never responded to her complaints. Dkt. 33, at ¶¶ 84, 86.

On October 11, 2013, Wuerffel was passed over for a promotion to the position of Lieutenant, even though she scored higher than three of the four males who were promoted. Dkt. 33, at ¶ 63. Wuerffel claims that not only were these individuals less qualified for the promotion than she was, but at least one was "politically connected, had 'clout,' and/or contributed to Dart's political campaign." Dkt. 33, at ¶ 66. While Defendant Dart ultimately decides who is promoted to the position of Lieutenant, Dana Wright ("Defendant Wright") and Helen Burke ("Defendant Burke") "participated in and approved the promotion of less qualified and politically connected employees over Sergeant Wuerffel." Dkt. 33, at ¶¶ 67, 68.

Wuerffel claims that the OPR investigation was initiated "to promote male employees and employees with clout instead of her." Dkt. 33, at ¶ 70. She also alleges that "[m]ale officers worked more overtime in 2012" than she did, but those male officers were never investigated. Dkt. 33, at ¶ 81. Additionally, she states that Defendant Figueroa's investigation was improper for a number of reasons. *See* Dkt. 33, at ¶¶ 72, 82. On or about October 25, 2013, Defendant Figueroa recommended that Wuerffel be separated from the Sheriff's Office. Dkt. 33, at ¶ 71. In November of 2013, Defendant Wright refused to meet with Wuerffel to discuss the OPR investigation and the continuing discrimination. Dkt. 33, at ¶ 73. On or about

December 3, 2013, Defendant Zychowski again denied Wuerffle's request for overtime and two days later she was suspended with pay. Dkt. 33, at ¶¶ 74, 77.

On December 19, 2013, Sheriff Thomas Dart ("Defendant Dart") signed a Merit Board Complaint against Wuerffel and he ultimately sought her termination. Dkt. 33, at ¶ 78. The next day, Defendant Wright and Zelda Whittler ("Defendant Whittler") placed Wuerffel on leave without pay. Dkt. 33, at ¶ 79. Wuerffel appealed her suspension without pay, and she claims that Defendant Whittler ignored the appeal. Dkt. 33, at ¶ 80. "Similarly situated employees who have committed similar or more egregious offenses" have not been suspended without pay nor have they been terminated. Dkt. 33, at ¶¶ 79, 104, 105. Moreover, "[t]he Sheriff Defendants did not file charges for termination against other similarly situated male officers or officers who had clout." Dkt. 33, at ¶ 103. Finally, Wuerffel alleges that the Merit Board's findings and decision to terminate her are erroneous. Dkt. 33, at ¶ 93.

Wuerffel filed a six Count Amended Complaint against the Sheriff's Office, Defendants Dart, Zychowski, Whittler, Wright, Parks, Burke, and Figueroa, in their individual capacities, ("Sheriff's Office Defendants"), the Cook County Sheriff's Merit Board ("Merit Board"), as well as the individual Merit Board Members, including its Chairman, James P. Nally, Vice Chairman, Byron Brazier, Secretary, John Dalicandro, and Board Members, Brian Riordan, Jennifer E. Bae, Vince Winters, Kim R. Widup, and Patrick Brady, (collectively, "individual Merit Board Defendants"), and Cook County. Wuerffel alleges the following Counts against

various combinations of Defendants: political retaliation and discrimination in violation of her First Amendment rights (Count I); Title VII gender discrimination (Count II); Title VII retaliation (Count III); Fourteenth Amendment equal protection under § 1983 (Count IV); Intentional Infliction of Emotional Distress ("IIED") (Count V); administrative review pursuant to 735 ILCS 3-101 *et seq.* (Count VI).

## LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") "tests the sufficiency of the complaint, not the merits of the case." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012). The allegations in a complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff need not provide detailed factual allegations but must provide enough factual support to raise his right to relief above a speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A claim must be facially plausible, meaning that the pleadings must "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The claim must be described "in sufficient detail to give the defendant 'fair notice of what the . . . claim is and the grounds upon which it rests.'" *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements," are insufficient to withstand a motion to dismiss under Rule 12(b)(6). *Iqbal*, 556 U.S. at 678.

## DISCUSSION

### I. Cook County as a Defendant

As a preliminary matter, the individual Sheriff's Office Defendants argue that "Cook County is improperly named as a substantive party in Counts I, IV, V, and VI and must be dismissed" because at all times the individual Sheriff's Office Defendants were employed by the Cook County Sheriff and there is no employer-employee relationship between the county and its sheriff. Dkt. 64, at p. 14-15. Wuerffel asserts that the "Complaint makes clear that Cook County is named only as an indispensable party for purposes of indemnification." Dkt. 70, at p. 13. Defendants are correct that an "'Illinois county is separate from the sheriff's office in that county,' and therefore a county is not liable for the alleged misconduct by sheriff's office employees." *Young v. Cook Cnty. Sheriff Tom Dart*, No. 14-cv-06350, 2015 WL 8536734, at *2 (N.D. Ill. Dec. 10, 2015) (quoting *Mitter v. City of DuPage*, No. 13 C 841, 2013 WL 5951810, at *3 (N.D. Ill. Nov. 7, 2013)). However, "[t]he Seventh Circuit has also held that the County may properly be joined as a Defendant, not based upon its participation in any conduct, but because the County will have to pay any damages owed by the Sheriff's Office." *Hower v. Cook Cnty. Sheriff's Office*, No. 15 C 6404, 2016 WL 612862, at *2 (N.D. Ill. Feb. 2, 2016). Thus, Cook County remains a Defendant in the instant matter, but "solely in its capacity as indemnitor" for any claims brought against "the

Cook County Sheriff's Department." *Young*, 2015 WL 8536734, at n. 1; *see also Carver v. Sheriff of LaSalle Cnty.*, 324 F.3d 947, 948 (7th Cir. 2003)); *Carver v. Sheriff of LaSalle Cnty.*, 203 Ill. 2d 497, 516 (2003).

## II. The Merit Board as a Defendant

The Merit Board asserts that it "is only a necessary party for the administrative review count, Count VI." Dkt. 61, at p. 2. Wuerffel makes no response to this assertion. The Court agrees that the Merit Board is a necessary party for Count VI because "[t]he proper avenue for a legal remedy against the [Merit] Board is a state law administrative review claim." *See Bless v. Cook Cnty. Sheriff's Office*, 13 CV 4271, 2015 WL 890370, at *8 (N.D. Ill. Feb. 27, 2015). Count VI thus stands as to the Merit Board itself (but not the Individual Merit Board Defendants, as discussed below). However, the remaining Counts against the Merit Board are dismissed for the following reasons.

First, as Wuerffell acknowledges, the Merit Board seeks dismissal of Wuerffel's Title VII claims (Counts II and III) because it was not her employer. Dkt. 61, at p. 10; Dkt. 71, at p. 8. Wuerffel does not dispute this point, and instead concedes that her "Title VII claim was not and has never been directed against the Merit Board Defendants." Dkt. 71, at p. 8. Although Wuerffel mentions only Count III when making this concession, *id.*, it applies equally to her Title VII claim in Count II. Accordingly, the Merit Board's Motion to Dismiss Counts II and III is granted.

Wuerffell also fails to address the same argument by the Merit Board as to her § 1983 claims in Counts I and IV: "because the Board is not the employer there is no direct link to the allegedly discriminatory acts under 42 U.S.C. § 1983 either." Dkt. 61, at p. 10. Instead, Wuerffell argues that "the Merit Board was the instrument that the other Defendants used to bring manufactured charges against [her] and to selectively enforce charges against other employees based on their political affiliation or complaints of discrimination." Dkt. 71, at p. 6. But these allegations point to other Defendants, not the Merit Board. Moreover, these allegations do not compensate for the fact that the Merit Board had no employment relationship with Wuerffell to support her § 1983 claim that she was discriminated against as an "employee." *See* Dkt. 33, at ¶¶ 108, 113, 120, 135; *see also Bless*, 2015 WL 890370, at *7-8 (dismissing § 1983 discrimination claim against Merit Board: "Bless cannot sue the Merit Board for retaliation because he was never its employee"). The Merit Board's motion to dismiss Counts I and IV is, therefore, granted.

Finally, the Merit Board seeks dismissal of Wuerffell's IIED claim, contending that "there are no factual, non-conclusory allegations in the First Amended complaint that the Merit Board actions were extreme or outrageous." Dkt. 61, at p. 12. Here again, Wuerffell does not dispute the point, instead arguing that she "will be required to provide evidence in support of her claims in order to survive summary judgment," but that "she is not required to do so at this stage of the case." Dkt. 71, at p. 9. However, while Wuerffell need not "provide evidence in support of her claims" at this

stage, as noted above, she must nonetheless allege facts from which extreme and outrageous conduct may be inferred. *See Tracy v. Hull*, No. 15 C 5052, 2015 WL 5693752, 2 (N.D. Ill. Sept. 28, 2015) (Plaintiff's allegations did not rise to the level of outrageousness necessary to support an IIED claim.) Factual allegations describing the extreme and outrageous behavior are necessary for the court to draw the reasonable inference that the Defendant is liable for IIED. *Kinney v. City of Waukegan*, No. 12 C 6810, 2013 WL 4401366, at *8 (N.D. Ill. Aug. 14, 2013). The allegations that the Merit Board's conduct was erroneous, unfair, and unreasonable are insufficient to establish that the Merit Board's conduct was "so outrageous in character and so extreme in degree, as to go beyond all possible bounds of human decency." *Parker v. Side by Side, Inc.*, 50 F. Supp. 3d 988, 1023 (N.D. Ill. 2014). As previously explained, the proper avenue for challenging the Merit Board's allegedly "erroneous, unfair, and unreasonable" conduct is an administrative review claim. Thus, Count V against the Merit Board is dismissed.

### III. The Individual Merit Board Defendants

The individual Merit Board Defendants argue that they are entitled to quasi-judicial immunity, and therefore, all claims against them should be dismissed. Dkt. 61, at p. 2-6. Wuerffel does not respond to this argument, but instead explains that the Amended Complaint clearly articulates that "the merit board members were named only for the purpose of the administrative-review claim." Dkt. 71, at p. 3. To support this argument she relies on the Administrative Review Law, 735 ILCS 5/3-107(a),

which states that "in any action to review any final decision of an administrative agency, the administrative agency and all persons, other than the plaintiff, who are parties of record to the proceedings before the administrative agency shall be made defendants." Wuerffel's reliance on *Orlowski v. Village of Villa Park Board of Fire & Police Commissioners*, 273 Ill. App. 3d 42 (1995), and *Zelisko v. Board of Fire & Police Commissioners of the Village of Oak Brook*, 285 Ill. App. 3d 323 (1996), is unpersuasive because both of these cases were decided prior to the 1997 amendment to section 3-107(a) of the Administrative Review Law. After *Orlowksi* and *Zelisko* were decided the General Assembly added the following language to section 3-107(a) of the Administrative Review Law:

> No action for administrative review shall be dismissed for lack of jurisdiction based upon the failure to name an employee, agent, or member, who acted in his or her official capacity, of an administrative agency, board, committee, or government entity, where the administrative agency, board, committee, or government entity, has been named as a defendant as provided in this Section.

735 ILCS 5/3-107(a). Thus, contrary to Wuerffel's argument, the language from the current Administrative Review Law does not require that each member of "an administrative agency, board, committee, or government entity" be named as a defendant when the administrative agency, board, committee, or government entity has been named as a defendant, in order to avoid dismissal of an action for administrative review. *See Hammond v. Firefighters Pension Fund of City of Naperville*, 369 Ill. App. 3d 294, 305-06 (2006).

Wuerffel also relies on *Three Angels Broadcasting Network, Inc. v. Department of Revenue*, 381 Ill. App. 3d 679, 691 (2008), a case decided after the 1997 amendment to the Administrative Review Law, to argue that the joinder requirements of the Administrative Review Law are mandatory and failure to comply with those requirements mandates a dismissal of the review proceeding. Dkt. 71, at p. 4. However, as explained, just by naming the Merit Board as a defendant in the instant matter, Wuerffel has complied with the requirements of the Administrative Review Law. Thus, the individual Merit Board Defendants' motion to dismiss Counts I through VI is granted.

## IV. Count I—Section 1983 Political Discrimination Claim

Count I alleges that "Defendants unlawfully retaliated against [Wuerffel] for the exercise of her rights under the First Amendment." Dkt. 33, at ¶ 109. To establish a *prima facie* case of political retaliation or political discrimination, a plaintiff must allege that: (i) her speech or activity was protected by the First Amendment; (ii) she suffered an adverse action likely to deter protected speech or activity in the future; and (iii) her "First Amendment activity was 'at least a motivating factor' in the defendants' decision to retaliate." *Bless*, 2015 WL 890370, at *6 (quoting *Santana v. Cook Cnty. Bd. of Rev.*, 679 F.3d 614, 622 (7th Cir. 2012)).

### A. Sheriff's Office

To establish that a government entity is liable for unconstitutional conduct under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658

(1978), a plaintiff must allege that he or she suffered "a constitutional injury resulting from a municipal policy, custom, or practice." *Lewis v. Cnty. of Cook*, No. 10 C 1313, 2011 WL 839753, at *13 (N.D. Ill. Feb. 24, 2011). The plaintiff must assert that the municipal policy, custom, or practice, "not only caused the constitutional violation, but was the moving force behind it." *Starks v. City of Waukegan*, 946 F. Supp. 2d 780, 792 (N.D. Ill. 2013) (quoting *Estate of Sims ex rel. Sims v. Cnty. of Bureau*, 506 F.3d 509, 514 (7th Cir. 2007)). "An official policy or custom may be established by means of an express policy, a widespread practice which, although unwritten, is so entrenched and well-known as to carry the force of policy, or through the actions of an individual who possesses the authority to make final policy decisions on behalf of the municipality or corporation." *Rice ex rel. Rice v. Corr. Med. Servs*, 675 F.3d 650, 675 (7th Cir. 2012). In the instant matter, Wuerffel relies on the latter two theories to establish that the Sheriff's Office is liable for unconstitutional conduct.

"With respect to the existence of a 'widespread custom or practice,' the Seventh Circuit has not adopted any bright line rules in defining that term, except that the allegedly unconstitutional conduct 'must be more than one instance.'" *Bless*, 2015 WL 890370, at *5 (quoting *Thomas v. Cook Cnty. Sheriff's Dep't.*, 604 F.3d 293, 303 (7th Cir. 2010)). A plaintiff must show "that there is a policy at issue rather than just a random event." *Id*. at *7. A plaintiff can establish that there is "a policy at issue" by demonstrating that there is an implicit policy, a gap in expressed policies, or a

series of violations. *Id*. Wuerffel attempts to establish a widespread practice by alleging that there have been multiple instances of political discrimination.

Wuerffel claims that Defendants manufactured charges against her, and other employees, to retaliate against them because of their political affiliation and/or because of their complaints of political discrimination and retaliation. Dkt. 33, at ¶ 88. Additionally, she alleges that "Defendants have engaged in a pattern and practice of retaliation against employees based on their political affiliation and in response to their complaints about discrimination," and that "Defendants with the knowledge and/or consent of Defendant Dart have also engaged in selective enforcement of charges against employees based on political affiliation or non-affiliation and those who have complained of discrimination." *Id.*, at ¶¶ 89, 90. These allegations are not only conclusory, but they also fail "to allege who the other complainants are, how they were retaliated against and, more importantly, 'how these separate incidents weave together into a cognizable [County] policy.'" *Lewis*, 2011 WL 839753, at *14 (quoting *Valentino v Vill. of S. Chi. Heights*, 575 F.3d 664, 675 (N.D. Ill. 2009)).

Moreover, Wuerffel's reliance on *Shakman v. Democratic Organization of Cook County*, 920 F. Supp. 2d 881 (N.D. Ill. 2013), and *Burruss v. Cook County Sheriff's Office*, No. 08 C 6621, 2013 WL 3754006 (N.D. Ill. July 15, 2013), to demonstrate that a widespread practice of political retaliation existed within the Sheriff's Office, is misplaced. *See Bless*, 2015 WL 890370, at *8; Dkt. 33, at ¶¶ 64,

114-19; Dkt. 70, at p. 4-5. This Court will not "infer solely from the existence of the *Shakman* decree that the [Sheriff's Office] violated the terms of that decree for the purpose of this case." *Bless*, 2015 WL 890370, at *8. While a federal jury found that the former First Executive Assistant at the Sheriff's Office, was liable for political retaliation after he decided "to disband a unit of the Cook County Jail that had supported Dart's election opponent," *id.*; *see also* Dkt. 33, at ¶ 114, "the actions of a single employee in a separate division of the CCSO [Cook County Sheriff's Office] cannot give rise to an inference of a widespread practice." *Bless*, 2015 WL 890370, at *8; *see also Thomas*, 604 F.3d at 303. Additional allegations are required, including "the others" against whom Defendants allegedly manufactured charges against because of their political affiliation and how these separate incidents "weave together," such that they create a cognizable policy of discrimination within the Sheriff's Office. *See Coleman v. Cook Cnty.*, No 10 C 2388, 2011 WL 2647891, *15 (N.D. Ill. June 22, 2011); *Goods v. Dart*, No. 09 C 7406, 2011 WL 856816, at *4 (N.D. Ill. Mar. 8, 2011). Consequently, Wuerffel's allegations do not establish a widespread practice, that "is so entrenched and well-known as to carry the force of policy." *Rice*, 675 F.3d at 675.

In the alternative, Wuerffel attempts to plead a *Monell* claim by alleging that an individual with "final policymaking authority" for the Sheriff's Office caused her constitutional injury. Dkt. 33, at ¶¶ 9, 11, 14, 17, 20, 23 107. She contends that these allegations are "without doubt sufficient to state a *Monell* claim at the pleading stage

of a case." Dkt. 70, at p. 5. Defendants assert that "by labeling each defendant as a final policymaker," Wuerffel is attempting to "base her claims on a theory of *respondeat superior*, which is impermissible in § 1983 actions." Dkt. 64, at p. 7. Moreover, Defendants argue that even if each Defendant is a policymaker, the allegations of political discrimination as to the individual Sheriff's Office Defendants "are insufficient to sustain a claim of political discrimination." *Id.*

Whether an official is a final policymaker is a question of state or local law. *Valentino*, 575 F.3d at 675 (citing *Kujawski v. Brd. of Comm'r of Bartholomew Cnty, Ind.*, 183 F.3d 734, 737 (7th Cir. 1999)). An allegation that one of the individual defendants is "the *decisionmaker* on hiring/firing decisions" for the Sheriff's Office "does not necessarily make him the *policymaker* on those issues." *Id.* Rather, "to have final policymaking authority, an official must possess '[r]esponsibility for making law or setting policy,' that is, 'authority to adopt rules for the conduct of government.'" *Rasche v. Vill. of Beecher*, 336 F.3d 588, 599 (7th Cir. 2003) (quoting *Auriemma v. Rice*, 957 F.2d 397, 400-01 (7th Cir. 1992)). To determine whether an individual is a final policymaker, courts review "the relevant legal materials, including state and local positive law, as well as 'custom or usage having the force of law.'" *Killinger v. Johnson*, 389 F.3d 765,772 (7th Cir. 2004) (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)).

"In Illinois, a sheriff has 'final policy-making authority.'" *Hernandez v. Cook Cnty. Sheriff's Office*, No. 13 C 7949, 2014 WL 1339686, at *3 (N.D. Ill. Apr. 3,

2014) (quoting *Brokaw v. Mercer Cnty.*, 235 F.3d 1000, 1013 (7th Cir. 2000)). In the instant matter, Wuerffel alleges that Defendant Dart is among those responsible for her constitutional injury. Specifically, she claims that: (i) Defendant Dart was ultimately responsible for promotion decisions for positions of Lieutenant; (ii) he promoted other individuals who were less qualified to the position of Lieutenant; (iii) he ignored her complaints regarding retaliation and discrimination; and (iv) he sought her termination. Dkt. 33, at ¶¶ 67, 69, 78. As recognized by the Supreme Court, "a single unconstitutional act by a final policymaker can be enough for *Monell* liability." *Bless v. Cook Cnty. Sheriff's Office*, 13-cv-4271, 2016 WL 958554, at *7 (N.D. Ill. Mar. 8, 2016) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986)). Consequently, Wuerffel has stated a *Monell* claim by plausibly alleging that someone with "final policymaking authority" for the Sheriff's Office (Sheriff Dart) caused her constitutional injury.

## B. Individual Sheriff's Office Defendants

Turning now to Wuerffel's § 1983 claim against the individual Sheriff's Office Defendants, to establish individual liability under § 1983, Wuerffel must allege that the Sheriff's Office Defendants "were acting under the color of state law and that their conduct violated [ ] [her] rights under the Constitution or laws of the United States." *Christianson v. Yarbrough*, No. 14 C 7363, 2015 WL 1607437, at *2 (N.D. Ill. Apr. 2, 2015). "A 'causal connection, or an affirmative link' must exist between the violation and the defendant." *Id.* (quoting *Wolf-Lillie v. Sonquist*, 699 F.2d 864,

869 (7th Cir. 1983)). Thus, "a supervisory official cannot be held vicariously liable under § 1983" for his subordinate's conduct, unless that supervisory official "'knowingly, willfully, or at least recklessly'" caused the alleged violation. *Christianson*, 2015 WL 1607437, at *2 (quoting *Rascon v. Hardiman*, 803 F.2d 269, 274 (7th Cir. 1986)).

When a plaintiff alleges individual political retaliation or political discrimination claims, she must successfully plead causation. *See Maxwell v. Cnty. of Cook*, No. 10 CV 00320, 2011 WL 4639530, at *8 (N.D. Ill. Mar. 17, 2011). "To plead causation in a political discrimination claim, the plaintiff must allege: (1) that a decision maker was aware of his political affiliation (or lack thereof), and (2) the decision maker based an employment decision on this affiliation." *Id*. However, while "a plaintiff must ultimately establish but-for-causation to succeed on a political discrimination claim, he or she may begin by making an initial showing that speech was a 'motivating factor' in the employer's adverse decision." *Christianson*, 2015 WL 1607437, at *2. "The burden then shifts to the employer to rebut the causal inference raised by the plaintiff's evidence." *Id*. Consequently, "at the motion to dismiss stage, a plaintiff need only show that speech was a motivating factor behind the employer's adverse action." *Id*. at *2; *see also Bless*, 2015 WL 890370, at *7.

Wuerffel's allegations sufficiently support the first element of a political discrimination claim, because "hiring, firing, or transferring [non-policy] making employees based on political motivation violates the First Amendment." *Lewis*, 2011

WL 839753, at *14 (quoting *Hall v. Babb*, 389 F.3d 758, 762 (7th Cir. 2004)); *see also Christianson*, 2015 WL 1607437, at *3 ("it is well established that political non-affiliation is constitutionally protected conduct"); *see also Hermes v. Hein*, 742 F.2d 350, n.3 (1984)) Furthermore, denial of a promotion and termination from the Sherriff's Office constitute adverse employment actions. *See Lewis v. City of Chi.*, 496 F.3d 645, 653 (7th Cir. 2007). Thus, Wuerffel has also sufficiently pleaded facts that establish the second element of her political discrimination claim.

Regarding the causation element of Wuerffel's individual political discrimination claims, the Sheriff's Office Defendants argue that Wuerffel has failed to allege that these individuals were aware of her "political affiliation, or lack thereof, or were aware of any protected political activity engaged in by [Wuereffel]." Dkt. 64, at p. 9. Moreover, they argue, that even if they were aware of her political affiliation or lack thereof, they were not personally involved in the violation of Wuerffel's First Amendment rights, and therefore, cannot be held liable under § 1983. *Id*. The Court will address each of these arguments as they relate to the individual Sheriff's Office Defendants, including Defendant Figueroa.

As to Defendant Dart, Wuerffel alleges that: (i) she informed Defendant Dart of the ongoing discrimination; (ii) that Defendant Dart failed to respond to her complaints; (iii) that Defendant Dart was responsible for promotion decisions for the position of Lieutenant at the Sheriff's Office; (iv) that he promoted an individual that was politically connected instead of Wuerffel; and (v) that he ultimately sought her

termination. Dkt. 33, at ¶¶ 66, 67, 78, 84, 91. While the individual Sheriff's Office Defendants are correct that Wuerffel makes several general allegations about "Defendants" as a whole, at this point in the litigation, Wuerffel has alleged sufficient facts to establish that Defendant Dart was aware of Wuerffel's political affiliation and that he "caused or participated in" the alleged constitutional violation. Consequently, Defendant Dart's motion to dismiss Count I is denied.

Wuerffel alleges that Defendant Wright (i) "participated in and approved the promotion of less qualified and politically connected employees;" (ii) refused to meet with Wuerffel "to discuss the false OPR investigation and discrimination;" (iii) failed to investigate Wuerffel's complaints of discrimination and retaliation; and (iv) placed Sergeant Wuerffel on leave without pay. Dkt. 33, at ¶¶ 68, 73, 79, 84. At this point in the litigation, Wuerffel has pleaded sufficient facts to demonstrate Defendant Wright was aware of Wuerffel's political affiliation or non-affiliation, as Defendant Wright supposedly participated in the promotion of "politically connected employees over [ ] Wuerffel." Thus, Defendant Wright's motion to dismiss Count I is denied.

Similarly to Defendant Wright, Wuerffel alleges that Defendant Burke "participated in and approved the promotion of less qualified and politically connected employees." Dkt. 33, at ¶ 68. This allegation sufficiently demonstrates that Defendant Burke was aware of Wuerffel's political affiliation or non-affiliation and that she participated in the purported constitutional violation. Therefore, Defendant Burke's motion to dismiss Count I is denied.

The allegations against Defendant Whittler include that Defendant Whittler (i) was responsible for placing Wuerffel on leave without pay; (ii) ignored Wuerffel's requests to reverse the decision to suspend her without pay; and (iii) overlooked Wuerffel's discrimination and retaliation complaints. Dkt. 33, at ¶¶ 79, 80, 84. Moreover, she claims that "Defendants passed [her] over in favor of a candidate who was politically connected, had 'clout,' and/or contributed to Dart's political campaign." Dkt. 33, at ¶ 66. While this allegation is made against "Defendants," generally, at this point it is sufficient to demonstrate that Defendant Whittler knew of Wuerffel's political affiliation or non-affiliation. Accordingly, Defendant Whittler's motion to dismiss Count I is denied.

Similarly to Defendant Whittler, Wuerffel alleges that she informed Defendant Parks of the "ongoing discrimination and retaliation," that he did not respond to these complaints, and that he initiated the OPR complaint. Dkt. 33, at ¶¶ 52, 54, 56, 84. Additionally, she claims that "Defendants initiated the false OPR investigation against [her], in part, in order to promote male employees and employees with clout instead of her." Dkt. 33, at ¶ 70. These allegations, in addition to her claim that Defendants promoted individuals who were politically connected instead of her, are sufficient to establish that Defendant Parks was aware of her political affiliation or lack thereof. Thus, Defendant Parks' motion to dismiss Count I is denied.

Wuerffel's claim that Defendants initiated the OPR investigation in order to promote employees with clout, taken together with the allegations that Defendant

Figueroa conducted the OPR investigation and recommended Wuerffel's separation from the Sheriff's Office, are sufficient to establish that Defendant Figueroa was aware of Wuerffel's political affiliation and made a recommendation to terminate her based on her political affiliation. Dkt. 33, at ¶ 71. Therefore, his motion to dismiss Count I is denied.

As to Defendant Zychowski, the Court agrees with Wuerffel that he "has a more central role in Plaintiff's gender discrimination claim." Dkt. 70, at p. 9. However, allegedly Defendant Zychowski was one of the defendants who initiated the false OPR investigation against Wuerffel in order to promote employees with clout instead of her. Dkt. 70, at p. 9-10. Accordingly, Wuerffel has sufficiently pleaded that Defendant Zychowski was aware of her political affiliation or non-affiliation and that he participated in the purported constitutional violation. Thus, his motion to dismiss Count I is denied.

## V. Count II and III

The Sheriff's Office Defendants and Defendant Figueroa explain that "[d]ismissal of Counts II and III is not being pursued at this time based on the understanding that Counts II and III are brought against the CCSO [Sheriff's Office] only." Dkt. 64, at p. 2; Dkt. 68, at p. 2. Wuerffel failed to respond to these assumptions. However, in response to the Merit Board's argument that the Merit Board Defendants should be dismissed from the Title VII claims, Wuerffel explained that "Plaintiff clearly stated in Count III that the Title VII claim was directed against

Defendant Cook County Sheriff's Office." [1]  Dkt. 71, at p. 8.  Although Wuerffel addressed the Merit Board's argument regarding Counts II and III, she failed to deny the validity of the individual Sheriff's Office Defendants and Defendant Figueroa's assumption regarding Counts II and III.  Accordingly, Counts II and III are dismissed as to the individual Sheriff's Office Defendants and Defendant Figueroa.

## VI. Count IV—Section 1983 Violation of Equal Protection Claim

The Cook County Sheriff's Office, Defendant Dart, and Defendant Figueroa move to dismiss Count IV.

### A. Sheriff's Office

To state a *Monell* claim against the Sheriff's Office for violation of Wuerffel's right to equal protection, Wuerffel must plead "'factual content that allows the court to draw the reasonable inference' that the [Sheriff's Office] maintained a policy, custom, or practice of intentional discrimination against a class of persons to which [Wuerffel] belonged." *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678.)  Similar to her § 1983 political discrimination claim, Wuerffel alleges that there was a widespread practice of gender discrimination and that individuals with final policymaking authority engaged in gender discrimination. Additionally, she claims that the Sheriff's Office failed to properly train their employees to prevent gender discrimination.

---

[1] For the reasons explained above, we assume that Wuerffell's concession regarding Count III equally applies to Count II as both Count II and Count III are Title VII claims.

As explained above, "[i]n Illinois, a sheriff has 'final policy-making authority.'" *Hernandez*, 2014 WL 1339686, at *3 (quoting *Brokaw*, 235 F.3d at 1013). Moreover, "a single unconstitutional act by a final policymaker can be enough for *Monell* liability." *Bless*, 2016 WL 958554, at *7. In the instant matter, Wuerffel alleges that Defendant Dart was among those responsible for her constitutional injury. Specifically, she claims that Defendant Dart was responsible for promoting four male employees to Lieutenant, even though she "scored higher than three of the males" who were promoted, and Defendant Dart sought her termination. Dkt. 33, at ¶¶ 63, 67, 69, 78. While the Court questions whether Wuerffel has sufficiently pleaded facts to establish *Monell* liability against the Sheriff's Office based on a widespread practice of gender discrimination and based on its failure to provide proper training to prevent gender discrimination, these allegations are sufficient to establish a *Monell* claim based on the unconstitutional acts of a final policymaker. Thus, the Sheriff's Office's motion to dismiss Count IV is denied.

### B. Individual Sheriff's Office Defendants

"When the plaintiff alleges intentional discrimination, as here, it is clear that the same standards in general govern liability under sections 1981, 1983, and Title VII." *Bless*, 2015 WL 890370, at *4 (quoting *Friedel v. City of Madison*, 832 F.2d 965, 971 (7th Cir. 1987)). Thus, "to prevail on an equal protection claim under § 1983, a plaintiff must allege that '(1) he is a member of a protected class; (2) he was qualified for the applicable positions; (3) he suffered an adverse employment action;

and (4) similarly-situated persons not in the protected class were treated more favorably.'" *Id*. (quoting *McGowan v. Deere & Co.*, 581 F.3d 575, 579 (7th Cir. 2009)). Additionally, when a defendant is sued in his individual-capacity, "§ 1983 'creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation.'" *Johnson v. Chi. Transit Auth.*, No. 14 CV 09432, 2015 WL 5016482, at *4 (N.D. Ill. Aug. 24, 2015) (quoting *Hildebrandt v. Ill. Dep't of Natural Res.,* 347 F.3d 1014, 1039 (7th Cir. 2003)).

While a plaintiff must plead facts that are sufficient to establish that an "individual defendant caused or participated in a constitutional deprivation," *id*, "the Supreme Court has stated that the pleading standard for employment discrimination is different from the evidentiary burden a plaintiff must meet at summary judgment or trial." *Bless*, 2015 WL 890370, at * 4. As noted in *Swierkiewicz v. Sorema N.A.*, the requirements for establishing a *prima facie* claim for employment discrimination do not apply at the pleading stage. 534 U.S. 506, 511 (2002). Accordingly, "a complaint must contain something more than a general recitation of the elements of the claim, however, [the Seventh Circuit] nevertheless reaffirmed the minimal pleading standard for simple claims of race or sex discrimination." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008) ("[e]ven after *Bell Atlantic* . . . in order to prevent dismissal under Rule 12(b)(6), a complaint alleging sex discrimination need only aver that the employer instituted a (specified) adverse employment action against the

plaintiff on the basis of her sex"); *Swanson v. Citibank*, 614 F.3d 400, 404-05 (7th Cir. 2010) ("[a] plaintiff who believes that she has been passed over for a promotion because of her sex will be able to plead that she was employed by Company X, that a promotion was offered, that she applied and was qualified for it, and that the job went to someone else. That is an entirely plausible scenario, whether or not it describes what 'really' went on in this plaintiff's case."). Furthermore, in sex discrimination cases, "the complaint merely needs to give the defendant sufficient notice to enable him to begin to investigate and prepare a defense." *Tamayo*, 526 F.3d at 1085.

In the instant matter Wuerffel has met the minimal pleading standard required to state a § 1983 equal protection claim against Defendant Dart and Defendant Figueroa. Wuerffel is a member of a protected class, she was qualified for the position of Lieutenant, and she suffered adverse employment actions. Dkt. 33, at ¶¶ 43-46, 49, 51, 53, 55, 58, 59, 61, 63, 74, 78, 147. The Amended Complaint also contains sufficient allegations that other similarly situated male employees were treated more favorably. *Id.* at ¶¶ 49, 51, 53, 58, 63, 79, 81 103-05. Finally, although Defendant Dart disputes his involvement in the purported gender discrimination, at this stage in the litigation, Wuerffel has sufficiently alleged that Defendant Dart supposedly "caused or participated in a constitutional deprivation," as he made promotion decisions and he failed to respond to Wuerffel's complaints of discrimination. *Johnson*, 2015 WL 5016482, at *4; *see* Dkt. 33, at ¶¶ 67, 84.

As to Defendant Figueroa, Wuerffel includes allegations detailing the ways in which his OPR investigation was improper. Dkt. 33, at ¶¶ 70, 72. Moreover, she alleges that around October 25, 2013, Defendant Figueroa recommended that she be separated from the Sheriff's Office. *Id*., at ¶ 71. Defendant Figueroa's argument that "it is not plausible that [his] investigation" was based on Wuerffel's gender because the investigation occurred after the four male employees had been promoted to Lieutenant is improper because Defendant Figueroa makes this argument for the first time in his reply brief, Dkt. 79, at p. 4-6, which prevents Wuerffel of an opportunity to respond. *See Trading Tech. Int'l, Inc. v. eSpeed, Inc.*, 750 F. Supp. 2d 962, 970 (N.D. Ill. 2010). Moreover, the argument is unpersuasive because as of August 2013, two months before Defendant Figueroa conducted his investigation, Wuerffel complained to OPR and Defendant Figueroa about being harassed. Dkt. 33, at ¶ 60. Thus, Defendant Figueroa was aware of the alleged harassment prior to the promotion of the four male employees. These allegations adequately explain how Defendant Figueroa participated in a process allegedly tainted by discriminatory motives. *See Bless*, 2015 WL 890370, at *5. Accordingly, Defendant Dart's and Defendant Figueroa's motions to dismiss Count IV are denied.

## VII. Count V—Intentional Infliction of Emotional Distress Claim

Defendant Figueroa argues that Count V should be dismissed because this claim was filed beyond the one-year statute of limitations. Dkt. 68, at p. 8. Wuerffel concedes that section 8-101(a) of the Tort Immunity Act, 745 10/8-101(a), applies to

her IIED claim; however, she argues that "the one-year limitations period in the statute does not bar [ ] [the IIED] claim because Figueroa's own tortious acts against [Wuerffel] were only one part of a continuing violation." Dkt. 72, at p. 6-7. Consequently, according to Wuerffel, "[t]he last injury in the chain of tortious acts was [Wuerffel's] termination on June 10, 2015." Dkt. 72, at p. 7.

Wuerffel's argument that the "continuing violation" doctrine should be applied to her IIED claim against Defendant Figueroa is unpersuasive. The continuing violation doctrine "allow[s] suit[s] to be delayed until a series of wrongful acts blossoms into an injury on which suit can be brought." *Limestone Dev. Corp. v. Vill. of Lemont Ill.*, 520 F.3d 797, 801 (7th Cir. 2008). "It is thus a doctrine not about a continuing, but about a cumulative, violation." *Id.* "'A continuing violation or tort is occasioned by continuing unlawful acts and conduct, not by continual ill effects from an initial violation.'" *Northfield Ins. Co. v. City of Waukegan*, 701 F.3d 1124, 1133 (7th Cir. 2012) (quoting *Feltmeier v. Feltmeier*, 207 Ill.2d 263, 278 (2003)). "To differentiate these concepts, Illinois courts must determine whether a 'single overt act' is the cause of subsequent damages or whether the accused continually perpetrated harmful acts." *Id.*

In the instant matter, Wuerffel fails to allege that Defendant Figueroa "continually perpetrated harmful acts." Defendant Figueroa's purportedly improper investigation, which led to his recommendation that Wuerffel be separated from the Sheriff's Office, on or about October 25, 2015, amounts to a single overt act, and the

subsequent damages that may have flowed from it—Wuerffel's eventual termination—do not equate to "continuous harmful acts." Moreover, Wuerffel fails to allege facts to support her assertion that Defendant Figueroa played a role in the ongoing "harmful acts" perpetrated by the other Defendants. Thus, Wuerffel's IIED claim against Defendant Figueroa is barred by the applicable statute of limitations.

Alternatively, Wuerffel argues that her IIED claim against Defendant Figueroa should relate back to May 29, 2014, the date the original complaint was filed. Dkt. 72, at p. 8. She contends that as of May 29, 2014, Defendant Figueroa was on notice of the claims brought against him because the allegations in the Amended Complaint regarding Defendant Figueroa's improper investigation and failure to investigate her complaints of harassment and discrimination were included in the original complaint. *Id*. Moreover, she asserts that Defendant Figueroa was aware of the claims now being brought against him because he has the same attorney as the other individual Sheriff's Office Defendants. However, Wuerffel misinterprets Federal Rule of Civil Procedure 15(c)(3). The Seventh Circuit has "interpreted Rule 15(c)(3) to permit an amendment to relate back to the original complaint only where 'there has been an error made concerning the identity of the proper party and where that party is chargeable with knowledge of the mistake.'" *King v. One Unknown Fed. Corr. Officer*, 201 F.3d 910, 914 (7th Cir. 2000) (quoting *Worthington v. Wilson*, 8 F.3d 1253, 1256 (7th Cir. 1993)). Here, Wuerffel does not allege that her failure to name Defendant Figueroa in the original Complaint was a mistake, or that Defendant Figueroa should be charged

with knowledge of such a mistake. For these reasons, Defendant Figueroa's motion to dismiss Count V is granted.

## CONCLUSION

For the aforementioned reasons, the Merit Board Defendants' Amended Motion to Dismiss [60] is granted, and the Cook County Sheriff's Office Defendants' Amended Partial Motion to Dismiss [63] and Defendant Figueroa's Motion to Dismiss [67] are granted in part and denied in part, as follows: Cook County's motion to dismiss all Counts is granted, except to the extent that Cook County is named as a defendant for indemnification purposes; the individual Merit Board Defendants' motion to dismiss Counts I-VI is granted; the Merit Board's motion to dismiss Counts I-V is granted; Defendant Figueroa's motion to dismiss Count V is granted; and Counts II and III are dismissed as to the individual Sheriff's Office Defendants and Defendant Figueroa. All other motions are denied. It is so ordered.


_____
Charles P. Kocoras
United States District Judge


Dated: 4/27/2016