# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| TAMARA WUERFFEL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 14 C 3990 |
| | ) | |
| COOK COUNTY SHERIFF'S | ) | |
| OFFICE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

Plaintiff Tamara Wuerffel ("Wuerffel") seeks review of the Cook County Sheriff's Merit Board's ("Board") final decision, terminating her employment with the Cook County Sheriff's Office ("Sheriff's Office") (collectively, "Defendants"). Wuerffel asks the Court to reverse the Board's decision. Defendants ask that the decision be affirmed. For the following reasons, the Court denies Wuerffel's request to reverse the Board's decision.

## BACKGROUND

Wuerffel had been an employee of the Sheriff's Office since 1998. She was promoted to Police Officer in 2000 and promoted to Sergeant in 2008. On December 19, 2013, Sheriff Dart ("Dart") filed a complaint with the Board, alleging Wuerffel "engaged in unprofessional conduct and made false statements in violation of General

Order 04- 01-D, 03-01-A, 01-08-D and 00-02-D, Departmental Rules and Regulations 00-01-A.2, 00-01- A.4, 00-01-A.12, 00-01-A.13, 00-01-A.16, and Article X, Article 10 of the Board's Rules and Regulations." Specifically, Dart claimed that Wuerffel "request[ed] and receiv[ed] overtime compensation to which she was not entitled."

The Board conducted a five-day hearing on these charges in October 2014. The Board found that Wuerffel "violated multiple rules and regulations in that (1) she collected 8 hours of overtime on July 26, 2012 in the 'Johns' matter for a hearing lasting at most two hours; (2) that she received overtime for a court appearance on March 16, 2012 in the Calderon case when she had no involvement in the matter; (3) that she received overtime for court appearances on September 19 and October 26, 2012 in the Gonzalez case when the case had been previously disposed of on July 6, 2012; and (4) that she collected overtime on August 28 and October 3, 2012 in the Skinner case when the case was disposed of on August 27, 2012." Based upon these violations, the Board terminated Wuerffel's employment with the Sheriff's Office.

Wuerffel contends that this Court should reverse the Board's findings because (i) the Board failed to allow her discovery and the opportunity to present evidence on issues of discrimination and retaliation; failed to analyze the evidence under the just cause standard; utilized the wrong burden of proof; and erroneously admitted her OPR statements into evidence; (ii) because the Board's findings are against the manifest weight of the evidence; and (iii) the Board's decision to discharge Wuerffel was arbitrary and unreasonable.

# STANDARD OF REVIEW

A court's review of an administrative agency's decision regarding discharge of employment requires a two-step analysis. First, we need to determine whether the Board's findings of fact are contrary to the manifest weight of the evidence. Findings and conclusions of an administrative agency on questions of fact are held to be *prima facie* true and correct. *Jagielnik v. Bd. of Trustees of Police Pension Fund of Vill. of Mundelein*, 271 Ill. App. 3d 869, 875 (1995). Therefore, with regard to the Board's determination that Wuerffel violated multiple rules and regulations, this Court's function is not to reweigh the evidence or substitute its judgment for the judgment of the Board, but only to determine whether enough evidence exists to support the Board's findings. *Clark v. Bd. of Fire & Police Comm'rs of Vill. of Bradley*, 245 Ill. App. 3d 385, 392 (1993). Second, we need to determine whether the findings of fact provide a sufficient basis for the Board's discharge. *McDermott v. City of Chi. Police Bd.*, 2016 Ill. App. 1st ¶ 18. In making this determination, this Court may not consider whether it would have imposed a more lenient disciplinary sentence. *Sutton v. Civil Service Comm'n*, 91 Ill. App. 2d 409, 438 (1982). Review is limited to a determination of whether the Board acted unreasonably or arbitrarily by selecting a type of discipline that was inappropriate or unrelated to the needs of the service. *Wilson v. Bd. of Fire & Police Comm'rs of City of Markham*, 205 Ill. App. 3d 984, 992 (1990).

## DISCUSSION

We begin by determining whether the Board's findings of fact are contrary to the manifest weight of the evidence. The Board found Wuerffel violated multiple rules and regulations of the Sheriff's Office when she submitted time cards and collected money for cases that were previously terminated or in which she was not involved. The Board considered evidence of four cases where Wuerffel was alleged to have improperly received funds. First, in the Barbara Skinner case ("Skinner case"), the record reflects Wuerffel appeared in court and submitted overtime on August 28, 2012 and again on October 3, 2012. However, evidence presented to the Board showed that the Skinner case was resolved on August 27, 2012. Similarly, in the case of Jazmin Gonzalez ("Gonzalez case"), Wuerffel appeared in court on September 19, 2012 and October 26, 2012, and submitted overtime for both appearances. However, evidence showed that matter was resolved on July 6, 2012. The Board found Wuerffel also submitted overtime on a case she had no involvement with. In the matter of Jose Calderon (the "Calderon case"), Wuerffel submitted overtime for a court appearance on March 16, 2012. However, Officer Louie Goros ("Officer Goros") testified before the Board that Wuerffel was not present for the stop and arrest of Calderon. Lastly, Wuerffel submitted eight hours of overtime for "Johns" hearings on July 26, 2012. The record contains testimony from various Officers establishing that these proceedings generally last no more than two hours.

4

Based on this evidence, the Board found that Wuerffel violated multiple rules and regulations of the Sheriff's Office. Specifically, the Board found Wuerffel's conduct violated General Order PER 04-01-D. It states that, "[u]pon notification, Officers are required to appear for all court or hearing dates, during their regular days off, while attending academic training, while on medical roll, vacation, compensatory time and personal time." Further, Rule of Conduct 00-01-A.4, Section 4.2, states that "[n]o member of the Department will make false official record(s), reports or report any inaccurate, false or improper information." According to the Board, Wuerffel "submitted false documentation when, in the Skinner and Gonzalez matters, her overtime cards indicated that a hearing occurred and a future hearing was set, even though the case had previously been closed." Wuerffel additionally violated Rule of Conduct 00-01-A.4 when she "filled out an overtime card in the 'Johns' matter for 8 hours of overtime, even though the hearings lasted no more than 2 hours." The Board also concluded that Wuerffel's "conduct showed a lack of honesty which reflected poorly upon the Sheriff's Office." Lastly, the Board found that by submitting false overtime requests and collecting taxpayer dollars for nonexistent court dates, Wuerffel brought discredit upon the Sheriff's Office in violation of Rule of Conduct 11-01-A.13.

In her defense, Wuerffel presented evidence before the Board that sought to show her time card submissions were accidents, and not a malicious intent to defraud the government and taxpayers. In the Calderon case, Wuerffel testified that Officer

Goros told her that they had court on March 16, but did not tell her the specific case name. Wuerffel further testified that, when she filled out her court attendance card, she copied from Officer Goros "because he had the case numbers and information." Wuerffel claims "at most . . . [she] committed an unintentional error in putting the wrong case on her timesheet when she attended court on other cases." Wuerffel also claims that she went to court two times after the termination of the Gonzalez case because she was not "aware of the disposition of the case." In the Skinner case, Wuerffel testified "that she appeared on July 20th, but the defendant did not show up so the case was continued. [Wuerffel] then put the continuation date in her phone incorrectly and returned to court on August 28th, rather than August 27th." Wuerffel claimed that on August 28th, she "checked in with the state's attorney and learned that she had the wrong date and was told to come on the next date. She was not informed that the case had been disposed of on the previous day." With respect to the "John" hearings Wuerffel claims "that she was not told that the hearing was over" and she does not leave court until notified.

It is the function of the Board to determine the credibility of the witnesses. *Clark*, 245 Ill. App. 3d at 392. Here, the Board found Wuerffel not to be a credible witness. Further, Officer Goros and Officer Sean Murphy ("Officer Murphy") each separately testified before the Board that Wuerffel was "organized," "detailed," and "demanded accuracy." These findings belie Wuerffel's assertions that she "accidently appeared in court, or stayed too long, on several occasions." Therefore, after

6

reviewing the record and considering both parties' arguments, we hold that the Board's decision is not against the manifest weight of the evidence.

We next consider whether the Board's findings provided sufficient bases for the sanctions imposed. In the present matter, the Board found that Wuerffel's actions not only violated multiple rules and regulations of the Sheriff's Office, but also constituted theft and fraud. As Defendants' state in their Response, "[t]he Board has cause to discharge an officer who shows 'some substantial shortcoming which renders the employee's continuance in office in some way detrimental to the discipline and efficiency of the service and which the law and sound public opinion recognize as good reason for his no longer holding that position.'" *Remus v. Sheahan*, 387 Ill. App. 3d 899, 904 (2009). Here, Wuerffel was found to have "exhibited deceitful conduct" that "violated the public trust." Defendants further argue that "[t]he Sheriff has a legitimate interest in ensuring that all law enforcement officers maintain integrity, abide by all laws, and avoid conduct which tends to reflect negatively on the officer or the Sheriff." *Vill. of Oak Lawn v. Ill. Hum. Rts. Comm'n*, 133 Ill. App. 3d 221, 224 (1985) (holding that trustworthiness, reliability, good judgment, and integrity are all material qualifications for any job); *See Sindermann v. Civil Serv. Comm'n*, 275 Ill. App. 3d 917, 928 (1995) (holding that police officers are expected to act with integrity, honesty, and trustworthiness). Additionally, as the court found in *Lyles v. Department of Transportation* "[p]ublic policy requires a high degree of integrity in government employees. An employee's misconduct may be detrimental to the agency

7

itself and to the public as a whole inasmuch as, although the position may not be one of great notoriety, it is a position involving a degree of trust." 183 Ill. App. 3d 901, 912 (1989). As a law enforcement officer, Wuerffel was entrusted to uphold the very laws she is accused of breaking. As a result, the Sheriff's Department had a legitimate interest in dismissing an employee who not only violated internal rules and procedures, but also violated laws she was sworn to uphold.

Wuerffel maintains that her conduct did not constitute such a substantial shortcoming that would impair discipline or the day-to-day operations of the Sheriff's Office. Additionally, she claims that her years of service, lack of disciplinary history, and failure to be previously counseled mitigate against termination. In support of these arguments, Wuerffel cites to several cases this Court finds unpersuasive. Moreover, as Defendants point out, Wuerffel "has failed to cite to any case law that indicates that an officer who engages in time theft should not be terminated." For the reasons above, we agree with the Board's termination of Wuerffel.

Wuerffel further argues four additional reasons that the Board's decision should be reversed. According to Wuerffel, the Board: (i) failed to allow her discovery and the opportunity to present evidence on issues of discrimination and retaliation; (ii) erroneously admitted her OPR statements into evidence; (iii) failed to analyze the evidence under the just cause standard; and (iv) utilized the wrong burden of proof. However, Wuerffel has taken a scattershot approach to attacking the Board's decision

to terminate her employment. Several of her arguments, discussed below, are perfunctory, underdeveloped, and unsupported by relevant facts or case law.

Wuerffel contends that the Board erred in denying her the opportunity to conduct discovery and present evidence relating to her claims of discrimination and retaliation. Specifically, Wuerffel alleges "that the investigation and charges that were heard by the . . . Board were motivated by her political affiliation, gender, and/or complaints of discrimination." The Board decided that "claims of retaliation or discrimination were not relevant to whether [Wuerffel] violated the rules and regulations of the Sheriff's Office." We agree. Wuerffel's reliance upon *Humphries v. CBOCS W., Inc*. 474 F.3d 387, 407 (7th Cir. 2007) and *Curry v. Menard, Inc*., 270 F.3d 473, 479 (7th Cir. 2001) is unpersuasive. As Defendants state in their Response, "neither case involved an administrative review action, nor did they address what discovery should be allowed in a proceeding before an administrative body." For the above reasons, we find that the Board properly denied Wuerffel's requests for evidence related to her claims of discrimination and retaliation.

Wuerffel claims the Board also erred by admitting her OPR statements into evidence in violation of the Uniform Police Disciplinary Act ("UPODA"). The UPODA requires that an officer accused of wrongdoing be permitted to select counsel of her choosing during an administrative interrogation. *See* 50 ILCS 725.3.8(a) and 50 ILCS 725.3.9. According to Wuerffel, on July 24, 2013, and on September 3, 2013, Investigator Alexis Figueroa ("Figueroa") interrogated Wuerffel without an

9

attorney present in violation of the UPODA. However, the record reveals that Wuerffel was advised of her right to counsel and affirmatively waived that right. Instead, Wuerffel selected to have her union representative present for the interviews.

Wuerffel also alleges that her statements to OPR were improper because OPR did not create a complete record of her interviews. Defendants contend that "the record clearly reflects [Wuerffel's] statements are accurate, recorded summaries of both of [Wuerffel's] interviews." The UPODA requires that "[a] complete record of any interrogation shall be made, and a complete transcript or copy shall be made available to the officer under investigation without charge and without undue delay." *See* 50 ILCS 725.3.7. The UPODA, however, does not define "complete record." Therefore, Defendants assert that "the type of recording OPR engaged in by summarizing statements with a verification that the statements are accurate" is permissible. Further, the record shows that Wuerffel had the opportunity to review the completed record of her interviews. "This is evident by the fact that [Wuerffel] signed both of her statements, initialing each page and signed an acknowledgement that she had read her entire statement and 'found it to contain answers, which I gave in response to the questions, which were asked. My signature verified that the information contained in it is accurate and complete.'"

Wuerffel cites no legal support that the OPR statements were improperly taken or admitted. The record shows that OPR permitted her to choose her representation and recorded a summary of her statements. Additionally, the record contradicts

10

Wuerffel's contention that she was not permitted to make corrections to her statement. For these reasons, Wuerffel's OPR statements were properly considered by the Board.

Wuerffel contends that the Board "erroneously denied" her motion requesting that the just cause standard be applied to the Board's determination on the type of discipline that should be imposed. Therefore, she claims that the termination of her employment should be reversed. However, Defendants argue in their Response, that they "are in agreement with [Wuerffel] that in order for [Wuerffel] to be terminated as Sheriff's Police Sergeant, there must be just cause for her termination." Defendants further claim that, "instead of an argument that the Board failed to apply the just cause standard, [Wuerffel's] argument appears to be one that the Board did not consider the factors under the just cause standard. This is not evidence that the Board applied the wrong standard; this is an argument that the Board's decision was arbitrary and capricious." We agree with Defendants' characterization of Wuerffel's argument. The Board's decision was not arbitrary or capricious. For that reason, Wuerffel's argument fails.

Wuerffel asserts that the Board incorrectly applied the "preponderance of the evidence" standard in determining whether she violated the rules and regulations of the Sheriff's Office. Wuerffel contends the Board should have used the "clear and convincing" standard because the allegations brought against her alleged criminal behavior. In support of her position, Wuerffel relies on *Shallow v. Police Board of City of Chicago*, 95 Ill. App. 3d 901, 908 (1981), citing *Drezner v. Civil Service*

11

*Commission*, 398 Ill. 219, 227 (1974). Defendants contend that Wuerffel's reliance on *Shallow* and *Drezner* is misplaced as they have "been essentially overruled by subsequent case law."

According to Defendants, in *Board of Education v. State Board of Education*, 113 Ill. 2d 173, 189 (1986), "the Illinois Supreme Court found that the 'proper standard of proof applicable to tenured-teacher dismissal proceedings, including those where conduct might constitute a crime is charged, is the preponderance of the evidence standard.'" In that case, the Court used a balancing test between the private interest affected and the public or government interest to make this decision. *Id.* at 192-194. Expanding on the test used in *Board of Education,* the court in *Clark* determined the preponderance of the evidence standard was the appropriate standard in cases where a police officer was charged with conduct that could constitute a crime. 245 Ill. App. at 391. Defendants' utilization of the preponderance of the evidence standard was appropriate.

## CONCLUSION

For the aforementioned reasons, Wuerffel's request to reverse the Board's decision is denied. It is so ordered.

_____
Charles P. Kocoras
United States District Judge

Dated: 2/23/2017