# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| TAMARA WUERFFEL, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | 14 C 3990 |
| COOK COUNTY SHERIFF'S OFFICE, *et al.*, | ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

Before the Court is Defendants Sheriff Thomas Dart ("Dart"), Undersheriff Zelda Whittler ("Whittler"), Helen Burke ("Burke"), Marlon Parks ("Parks"), Dana Wright ("Wright"), Alex Figueroa ("Figueroa"), Ronald Zychowski ("Zychowski"), in their individual capacities, and the Cook County Sheriff's Office's ("CCSO") (collectively, "the Defendants") motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the following reasons, the Court grants the Defendants' motion.

## BACKGROUND

The following facts are taken from the record and are undisputed unless otherwise noted.

Plaintiff Tamara Wuerffel ("Wuerffel") is a former police sergeant with the CCSO. Dart is the Sheriff of Cook County, Illinois. Whittler is the Undersheriff of Cook County, Illinois and is a female. Burke has served as the Chief of the Bureau of Administration since January 2013. Wright has served as the First Deputy Chief of the Sheriff's Police since September 2013. Parks has served as the Deputy Chief of Patrol since 2012. Zychowski worked as a Commander in the Sheriff's Police Department and was in Wuerffel's chain of command for part of 2012 and 2013. Figueroa was employed by the CCSO as an investigator for the Office of Professional Review ("OPR").

*Initial Overtime Concerns*

On November 16, 2012, Zychowski received a Court Time/Attendance Report from Wuerffel, claiming nine overtime hours for attending court on November 15, 2012. Four days later, Zychowski inquired about the overtime request and discovered that the juries in the case were dismissed at lunch time. Accordingly, Zychowski questioned the validity of the overtime request and addressed the issue with Wuerffel. Based on the conversation, Wuerffel resubmitted the overtime request for a lesser number of hours. At this point, Wuerffel claims that she believed the matter to be resolved. However, this incident sparked a much larger inquiry into Wuerffel's court overtime requests.

On January 29, 2013, Zychowski wrote a memorandum to Parks informing him of the November 2012 incident concerning Wuerffel's overtime request. Parks then

asked his assistant to pull the court overtime hours for his sergeants in patrol. Though the parties dispute the accuracy of the results, the summary chart showed that Wuerffel had 247.5 annual court overtime hours, while the next highest sergeant had 64.5 hours.

*Harassment Allegations*

Starting in January 2013, Wuerffel claimed that Zychowski singled her out by making her get days off or benefit time approved by him. She also claims that Zychowski would not allow her to adjust her schedule, despite male officers being allowed to do so. Moreover, Wuerffel alleges that she was denied the opportunity to work overtime assignments, such as two roadside safety checks. Wuerffel raised these concerns in an e-mail to Parks, and they had a phone conversation regarding her concerns. At the time of this conversation, Parks already reviewed the chart of court overtime hours.

On February 13, 2013, Parks filed a complaint register ("CR") with OPR, requesting that they investigate Wuerffel "due to inconsistencies in court overtime." In Spring 2013, Figueroa was assigned to investigate the initial CR filed by Parks. Shortly thereafter in June 2013, Parks removed Wuerffel as a field training supervisor due to her pending OPR investigation.

*Lieutenant Promotion Process*

Since Wuerffel served as a sergeant with the CCSO, she was eligible for promotion to the rank of lieutenant. In order to qualify for promotion to lieutenant, Wuerffel had to pass a written examination facilitated by the Merit Board. Afterward,

the promotion process was run pursuant to Article B of the Sheriff's Employment Action Manual ("SEAM"). Mike Smith ("Smith") was the department head and the designee who handled this process for the 2012–2013 promotions.

Pursuant to the SEAM process, the lieutenant candidates are run through a battery of tests for purposes of evaluation and ranking. Qualified candidates are promoted in order of their SEAM ranking, except that the department head has the option of exercising a "discretionary pick" whereby he can promote a candidate from the list out of order. On December 3, 2012, Smith issued a memorandum to Chief of Staff Brian Towne ("Towne") that included a ranked list of the lieutenant candidates. On the list, Nathan Camer ("Camer") was ranked first, Wuerffel was second, Arthur Jackson ("Jackson") was third, Jason O'Malley ("O'Malley") was fourth, and Terrence Tabb ("Tabb") was eighth.

According to SEAM, if a candidate for promotion has an open OPR file, there is a hold put on their candidacy, with the default being that the candidate cannot be promoted. However, the Executive Director of OPR can override the hold. In February 2013, Smith asked Burke to inquire as to whether Wuerffel's OPR investigation was complete. In response, Ed Dyner ("Dyner") from OPR informed Burke that "something is very wrong" and Wuerffel's "OT is off the charts and there is no apparent reason for it. There may be fraud present ... it needs to be looked at."

In June 2013, Smith promoted Tabb to Commander and let it be known that Tabb would be promoted to lieutenant when the next round of candidates received

4

promotions. This meant that Tabb was the "discretionary pick" among the lieutenant candidates.

In September 2013, Smith moved out of the police department, and Burke took over the facilitation of the lieutenant promotions. At the time, there were three lieutenant positions available. On October 10, 2013, Burke e-mailed Jerome Graber ("Graber"), the Assistant Executive Director to OPR, to inquire about the status of Wuerffel's OPR investigation. Graber responded that the case was in final review, but the office would be recommending a substantial suspension. He further added that OPR would not release the hold on Wuerffel's promotion consideration.

Later that day, Burke e-mailed CCSO compliance officer Robert Egan ("Egan"), Wright, and Towne to inform them that "We will be promoting 4 police lts—Nate Camer, Art Jackson, Jason O'Malley and Terrence Tabb. There is a pending OPR investigation re Tammy [Wuerffel]. Please let us know if you have any problem with our proceeding." Egan approved the selections, and the following day Wright issued a memorandum announcing the promotions.

*OPR Investigation Results*

On October 25, 2013, OPR Executive Director Terry Hake ("Hake") signed a report recommending that Wuerffel be separated from employment with the CCSO. Figueroa signed off on the report, sustaining the findings that included charges of submitting false reports and conduct unbecoming. However, he did not make any

5

recommendation with respect to discipline. The final discipline determination was left to Hake, who recommended separation.

On December 5, 2013, Inspector Theodore Stajura gave Wuerffel notice that she was being suspended with pay and de-deputized. Two weeks later, Wuerffel was given a *Loudermill* hearing, which afforded her the opportunity to be heard before being suspended without pay. At the hearing, the *Loudermill* Board determined that Wuerffel should be relieved of duty without pay pending action from the Merit Board. The Board's decision was sent to Wright for review and then to Nancy Donahoe ("Donahoe"), who was acting as the Undersheriff's designee for final approval at the time. Both Wright and Donahoe signed off on the imposition of suspension without pay. On June 10, 2015, the Merit Board terminated Wuerffel's employment, effective December 19, 2013.

Based on these events, Wuerffel filed her amended complaint on July 10, 2015, alleging counts for political discrimination, gender discrimination, Title VII retaliation, equal protection violations, and intentional infliction of emotional distress. On June 12, 2018, the Defendants filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.

## **LEGAL STANDARD**

In ruling on a motion for summary judgment, the Court considers the "record as a whole." *Morgan v. Harris Trust & Sav. Bank of Chi.*, 867 F.2d 1023, 1026 (7th Cir. 1989). In its consideration, the Court construes all facts and draws all reasonable

inferences in favor of the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact arises where a reasonable jury could find, based on the evidence of record, in favor of the non-movant. *Anderson*, 477 U.S. at 248.

## **DISCUSSION**

The Defendants moved the Court to grant summary judgment in their favor on several grounds. First, they claim that qualified immunity defeats Count I for political discrimination and Count IV for an equal protection clause violation. Second, they state that absent a qualified immunity defense, the Defendants had no knowledge of Wuerffel's apolitical stance, so they cannot be liable for political discrimination. Third, the Defendants maintain that Wuerffel's gender discrimination claim in Count II fails because she was not performing her job satisfactorily. Fourth, the Defendants assert that Count III for retaliation fails because Wuerffel did not engage in protected activity. Finally, the Defendants assert that Count V for intentional infliction of emotional distress is barred by the Illinois Tort Immunity Act. The Court addresses each argument in turn.

**I. Qualified Immunity as to Counts I and IV**

"Qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or

7

constitutional rights of which a reasonable person would have known." *Hobgood v. Illinois Gaming Bd.*, 731 F.3d 635, 648 (7th Cir. 2013). The Defendants maintain that qualified immunity precludes Wuerffel's claims against the individual defendants in Counts I and IV because they "had probable cause to investigate, sustain and recommend Plaintiff's termination for time theft. They also had probable cause to disqualify Plaintiff from promotion to lieutenant based on this same misconduct."

At the summary judgment stage, the Court asks two questions to determine the applicability of qualified immunity: "(1) whether the facts, taken in the light most favorable to the plaintiff, make out a violation of a constitutional right, and (2) whether that constitutional right was clearly established at the time of the alleged violation." *Id.* To determine whether a right was "clearly established" at the time of the alleged violation, "the relevant, dispositive inquiry…is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Hernandez v. Cook County Sheriff*, 634 F.3d 906, 915 (7th Cir. 2011).

With respect to Count I, even where a plaintiff has alleged political discrimination, the Seventh Circuit has held that it is "objectively reasonable" to investigate public employees for misconduct. *Hernandez v. Sheahan*, 711 F.3d 816, 818 (7th Cir. 2013) ("Due to the fact that the authorities had probable cause to investigate the [plaintiffs], we are less concerned about other possible motivations for their treatment."). Regarding Count IV, the Seventh Circuit has held that where an investigation produces evidence of misconduct, the events that lead to the initiation of

the investigation do not preclude a grant of summary judgment. *Egonmwan v. Cook County Sheriff's Dep't*, 602 F.3d 845, 848–51 (7th Cir 2010). The record in this case is rife with evidence of Wuerffel's time theft, which the Defendants were well within their means to investigate and address. Under the instant circumstances, the individual defendants would not reasonably believe their conduct in performing such an investigation would be unlawful. Therefore, the individual defendants are granted qualified immunity as to Counts I and IV.

## II. Political Discrimination Claim

Regardless of the applicability of qualified immunity to the individual defendants, summary judgment is appropriate on Wuerffel's political discrimination claim. To state a *prima facie* case for political discrimination, "a plaintiff must show two things: first that the plaintiff's conduct was constitutionally protected, and second, that the protected conduct was a substantial or motivating factor in the employment decision." *Hall v. Babb*, 389 F.3d 758, 762 (7th Cir. 2004). If the plaintiff can make this showing, "the burden shifts to the defendant to demonstrate a legitimate, nonpolitical reason for the employment decision." *Id.*

It is undisputed that Wuerffel does not have an affiliation with a particular political party. However, the record lacks any evidence that the Defendants knew of Wuerffel's apolitical status. Indeed, the evidence that Wuerffel highlights to support her political discrimination claim is that those who did get promoted had attenuated political affinities for those in the CCSO, but she fails to demonstrate the Defendants'

9

knowledge of even those weak connections. Moreover, "[i]t is not enough to show only that the plaintiff was of a different political persuasion than the decisionmakers or the successful applicant." *Id.* Absent evidence that the Defendants knew of Wuerffel's apolitical status and let their knowledge motivate their promotion and termination decisions, this claim must fail. *Everett v. Cook County*, 655 F.3d 723, 728–29 (7th Cir. 2011) ("There was no evidence that the decision-makers were aware of [the Plaintiff's] apolitical status or [another candidate's] political contributions. Without such evidence, the entry of summary judgment was proper.") (quoting *Holmes v. Potter*, 384 F.3d 356, 362 (7th Cir. 2004) ("An employer's lack of knowledge about a protected category rings a death knell for a discrimination claim.")).

Even if Wuerffel had demonstrated that the Defendants knew of her apolitical status, the Defendants have sufficiently met their burden of demonstrating a legitimate, nonpolitical reason for their employment decisions. As previously noted, there is ample evidence in the record to support the Defendants' decision to terminate and not promote Wuerffel due to time theft. *See Brown v. County of Cook*, 661 F.3d 333, 337 (7th Cir. 2011) ("If all that's charged is discrimination on political grounds, *any* nonpolitical ground that the defendant can prove would have caused the discrimination regardless of the presence of political hostility will preclude liability."). Accordingly, the Court grants summary judgment in favor of the Defendants as to Count I.

**III. Gender Discrimination Claim**

To state a claim for gender discrimination under Title VII (Count II) or the equal protection clause (Count IV), Wuerffel must establish that: "(1) she was a member of a protected class; (2) she was performing to [her employer's] legitimate expectations; (3) despite her performance, she suffered an adverse employment action; and (4) others, similarly situated but not in the protected class, were treated more favorably." *Kirk v. Advocate Health & Hosps. Corp.*, 2017 WL 5462176, at *8 (N.D. Ill. 2017). If Wuerffel establishes these elements, the burden shifts to her employer to demonstrate a legitimate, non-discriminatory reason for her treatment. *Id.* If the employer carries this burden, Wuerffel "must demonstrate that the proffered explanation is pretextual." *Id.*

The Court finds that Wuerffel cannot establish a *prima facie* case of gender discrimination because she was not performing to her employer's legitimate expectations. Courts in this District have held that employees who commit time theft do not meet their employer's expectations, as "each incident leading up to the 'time theft' was grounds for termination." *Jones v. IKEA Illinois, LLC*, 2008 WL 5169749, at *4 (N.D. Ill. 2008). Given that the record is replete with evidence of Wuerffel's time theft, Wuerffel cannot establish the elements of this claim.

In limited circumstances, a plaintiff can still make out a *prima facie* case without satisfying the "legitimate expectations" prong. *Brummett v. Lee Enterprises, Inc.*, 284 F.3d 742, 745 (7th Cir. 2002). To do so, a plaintiff must show that the employer's legitimate expectations were themselves "a pretextual policy cloaked in the shadow of

[gender] discrimination." *Id.* However, Wuerffel cannot make this showing, as there is nothing inherently gendered about the expectation that an employee will accurately and honestly report their hours. Indeed, that is a fundamental underpinning to an employer-employee relationship. Accordingly, the Court grants summary judgment in favor of the Defendants as to Counts II and IV.

## IV. Retaliation Claim

To establish a retaliation claim under Title VII, Wuerffel must show that: "(1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) a causal connection exists between the two." *Kirk*, 2017 WL 5462176, at *10. Because Wuerffel cannot establish the first prong, her retaliation claim fails.

To show that an activity is protected, Wuerffel must demonstrate "that her discrimination occurred because of her gender" and that "she indicated her alleged discrimination was based on her sex." *Id.* at *10–11. "Merely complaining in general terms of discrimination or harassment, without indicating a connection to a protected class or providing facts sufficient to create that inference, is insufficient." *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006).

Despite complaining about her treatment to superiors, Wuerffel failed to tie the alleged harassment to her gender. The record indicates that Wuerffel complained of "harassment" and "an ongoing situation with Commander Zychowski." It also evidences complaints that her treatment stemmed from the belief that she "made too much money the year before." However, Wuerffel did not file a harassment or gender

12

discrimination complaint form and never filed an OPR complaint against Zychowski. Even drawing all reasonable inferences in Wuerffel's favor, the Court cannot find that the record sustains a finding that the complaints were ever tied to her gender. Therefore, we grant summary judgment on Count III in favor of the Defendants.

**V. Intentional Infliction of Emotional Distress Claim**

Finally, the Defendants maintain that summary judgment should be granted on Wuerffel's intentional infliction of emotional distress claim because it is barred by the Illinois Tort Immunity Act ("ITIA"). Section 2-201 of the ITIA states that:

> Except as otherwise provided by Statute, a public employee serving in a position involving the determination of a policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused.

745 ILCS 10/2-201. Courts in this district have held that "since decisions of hiring and firing are discretionary acts and require the balancing of interests, they warrant immunity under § 2-201." *Hanania v. Loren-Maltese*, 319 F. Supp. 2d 814, 836 (N.D. Ill. 2004). Given that the bases for Wuerffel's claims spring from CCSO's decisions about the lieutenant promotion process, her OPR investigation, and subsequent termination, immunity under the ITIA applies. Consequently, summary judgment is granted in favor of the Defendants as to Count V.

## **CONCLUSION**

For the aforementioned reasons, the Court grants the Defendants' motion for summary judgment. It is so ordered.

Dated: 9/25/2019  _____

Charles P. Kocoras
United States District Judge